IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

ANITA TAUBER,

    Plaintiff/Counter-Defendant,

v.                                           Case No.: PWG-11-3639

CYNTHIA SOUZA,

    Defendant/Counter-Plaintiff.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

This Memorandum and Order addresses Plaintiff/Counter-Defendant Anita Tauber's Motion for Partial Summary Judgment and supporting memorandum ("Pl.'s Mem."), ECF No. 28; Defendant/Counter-Plaintiff Cynthia Souza's Cross-Motion for Summary Judgment and/or to Dismiss Any Remaining Claims for Lack of Jurisdiction, ECF No. 30; Defendant/Counter-Plaintiff's Memorandum in Opposition to Plaintiff/Counter-Defendant's Motion and in Support of Defendant/Counter-Plaintiff's Cross-Motion ("Def.'s Mem."), ECF No. 31; Plaintiff/Counter Defendant's Reply & Opposition ("Pl.'s Reply"), ECF No. 32; and Defendant/Counter-Plaintiff's Surreply & Reply ("Def.'s Reply"), ECF No. 33. I find that a hearing is unnecessary in this case. *See* Local Rule 105.6. For the reasons stated below, Plaintiff's Motion for Partial Summary Judgment is DENIED, and Defendant/Counter-Plaintiff's Cross-Motion for Summary Judgment and/or to Dismiss Any Remaining Claims for Lack of Jurisdiction is DENIED.

# I. BACKGROUND

In 2004, Tauber and Souza, two realtors, entered into a partnership ("Partnership"), governed by a Memorandum of Understanding ("MOU"), Compl. Ex. A, ECF No. 1-1, which they amended in 2006 ("1st Am."), Compl. Ex. B, ECF No. 1-2. MOU 1. The purpose of the MOU was "to introduce" Souza to the clientele that Tauber, who recently had moved to Florida, had established in Maryland and Washington, D.C., and "to assist [Souza] in a smooth transition to the Referral Stage," in which Tauber would be less involved in the Partnership. *Id.* ¶ 8. Pursuant to the MOU, each partner would "exert her best effort to assist the other with the business of selling, buying or renting real estate in Maryland or Washington, D.C." *Id.* ¶ 4. The MOU provides that, during the initial "Equal Partner Stage" from September 1, 2004 through December 31, 2007, each partner would "receive 50% of the Partnership net revenues" and "be responsible for 50% of the Partnership expenses." *Id.* ¶ 6.a; 1st Am. ¶ 2. Thereafter, in the "Referral Stage," Tauber would receive "a Referral Fee" that would decline from 40% to 10% during the remainder of the Partnership, which would terminate on December 31, 2013. MOU ¶¶ 2 & 6.b; 1st Am. ¶¶ 1-3. The MOU also provides that "no Partnership assets, including . . . the Partnership client list . . . shall be sold, assigned, or transferred to any third party (hereinafter, a 'Sale') without the express written consent of both [Tauber and Souza]." MOU ¶ 10.

Tauber claims that the parties exchanged "reconciliation[s] of the Partnership's expenses for 2006 and 2007," but never resolved how much Tauber owed. Compl. ¶¶ 12-13, ECF No. 1. According to Tauber, Souza "refused to pay Ms. Tauber certain referral fees[;] . . . . improperly charged Ms. Tauber for certain Partnership expenses[; and] . . . failed to keep Ms. Tauber regularly informed of her 'activities in connection with the business of the Partnership.'" Compl. ¶¶ 15-16 (quoting MOU ¶ 9). On that basis, Tauber filed a two-count complaint for breach of

contract and unjust enrichment.[1] Compl. ¶¶ 17-22. Souza filed a Counterclaim, alleging that Tauber breached the MOU when she "failed and/or refused to reimburse Ms. Souza for half" of the business expenses incurred in the Equal Partner Stage, and also when she "caused a third party, Tauber Real Estate Services, LLC to send marketing materials to individuals on the Partnership Client List." Am. Countercl. ¶¶ 4-5 & 9-10, ECF No. 23.

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, No. 12-1722, --- F.3d ---, 2013 WL 1866940, at *3 (4th Cir. May 6, 2013). When considering cross-motions for summary judgment, the court must consider "each motion . . . individually" and view "the facts relevant to each . . . in the light most favorable to the non-movant." *Mellen v. Bunting*, 327 F.3d 355, 363 (4th Cir. 2003). If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Celotex v. Catrett*, 477 U.S. 317 (1986). The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). Instead, the evidentiary materials submitted must

---

[1] When an express contract is present, as is the case here, a plaintiff cannot recover under the quasi-contractual theory of unjust enrichment. *See Froelich v. Erickson*, 96 F. Supp. 2d 507, 524 (D. Md. 2000), *aff'd sub nom. Froelich v. Senior Campus Living, LLC*, 246 F.3d 664 (4th Cir. 2001). Because Souza did not seek summary judgment on this point, the Court will not address and resolve it *sua sponte*.

3

show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id.*

### III. DISCUSSION

#### A. Statute of Limitations

Souza insists that Tauber's claims from prior to December 19, 2008 are barred by the statute of limitations, such that summary judgment in Souza's favor is appropriate on those claims. Def.'s Mem. 9, 16-17. Tauber disagrees, contending that, because the parties were partners, the "'continuation of events' principle" tolled the statute of limitations until Tauber became aware of the harm. Pl.'s Reply 7.

Maryland law[2] imposes a three-year statute of limitations on breach of contract actions. Md. Code Ann., Cts. & Jud. Proc. § 5-101. The date of accrual begins when "the plaintiff discovers, or through the exercise of due diligence, should have discovered, the injury." *Frederick Rd. Ltd. P'ship v. Brown & Sturm*, 756 A.2d 963, 973 (Md. 2000). Yet, "under the 'continuation of events' principle, a harmed party's duty to investigate claims against a fiduciary for statute of limitations purposes is relaxed during the existence of the relationship." *Dual Inc. v. Lockheed Martin Corp.*, 857 A.2d 1095, 1108 (Md. 2004) (citing *Frederick Rd.*, 756 A.2d at 974-75). Nonetheless, even in a fiduciary relationship, "the statute of limitations would begin to

---

[2]"In an action based upon diversity of citizenship, the relevant state law controls. The district court must apply the law of the forum state, including its choice of law rules." *Limbach Co. LLC v. Zurich Am. Ins. Co.*, 396 U.S. 358, 361 (4th Cir. 2005) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938)). Without analyzing Maryland's choice of law rules, Tauber states that, "[b]ecause jurisdiction is based on diversity of citizenship, Maryland law governs issues of contract law." Pl.'s Mem. 6. Souza agrees that "Maryland contract law controls the outcome of this case," and adds that "[i]t is also Maryland law that controls the statute of limitations issues . . . ." Def.'s Mem. 21. As both parties cite Maryland law, the Court assumes that Maryland law applies.

4

run against an aggrieved party if that party had knowledge of facts that would lead a reasonable person to undertake an investigation that, with reasonable diligence, would have revealed wrongdoing on the part of the fiduciary." *Dual, Inc.*, 857 A.2d at 1108; *see Frederick Rd.*, 756 A.2d at 976.

Here, the parties, who are partners in the Partnership, are in a fiduciary relationship. *See Lasater v. Guttman*, 5 A.3d 79, 93 (Md. Ct. Spec. App. 2010); *Buxton v. Buxton*, 770 A.2d 152, 164 (Md. 2001). Therefore, the question is when Tauber knew or should have known of Souza's alleged wrong, given their relationship. This is not a question that the Court ordinarily answers on summary judgment. *See Dashiell v. Meeks*, 913 A.2d 10, 22 (Md. 2006). Rather, "the ultimate factfinder" typically determines "whether the plaintiff failed to discover the cause of action because he failed to exercise due diligence or whether he was unable to discover it (and, as a result, unable to exercise due diligence) because the defendant concealed the wrong." *Id.*; *see Frederick Rd.*, 756 A.2d at 976.

According to Tauber, she did not become aware of the harm until August 2011. Pl.'s Reply 7. Tauber contends that she "did not do an accounting of partnership revenues or expenses, because the parties trusted each other." *Id.* at 3. Further, in her view, the earliest that perhaps she "should have become suspicious" was "in May 2009 after Ms. Tauber requested rental commissions and Ms. Souza failed to respond," a date which preceded the filing of this lawsuit by less than three years. *Id.* at 3 n.1. Souza counters that, according to Tauber's sworn testimony, Tauber has known since 2004 that Souza owed her rental commissions. Def.'s Reply 6.

Certainly, in Tauber's Objections and Answers to Defendant's First Set of Interrogatories, Tauber stated that she has "'been aware of rental commissions being owed to

[her] since entering into the MOU'" in 2004. Pl.'s Answers to Interrogatories 5, Def.'s Mem. Ex. 7, ECF No. 31-7. Yet, in the same answer, Tauber explained that, "[t]o assist Ms. Souza in covering her share of the partnership's expenses, Ms. Tauber permitted Ms. Souza to defer payment on rental commissions owed to Ms. Tauber until Ms. Souza generated sufficient income to cover her share of the partnership expenses." *Id.* Neither party has pointed to any evidence that indicates when Souza had to begin payment on rental commissions. When Tauber should have known that Souza was not, but should have been, paying rental commissions is a question for the ultimate factfinder. *See Dashiell*, 913 A.2d at 22; *Frederick Rd.*, 756 A.2d at 976. Similarly, neither party has identified any evidence showing when Tauber knew, or should have known, how much she should have been, but was not, paid in sales commissions. This, also, is a question for the finder of fact. *See Dashiell*, 913 A.2d at 22; *Frederick Rd.*, 756 A.2d at 976. Therefore, summary judgment in Souza's favor as to the claims for rental and sales commissions from prior to December 19, 2008 is DENIED. *See* Fed. R. Civ. P. 56(a).

With regard to money allegedly owed to Tauber for expenses, Souza argues that Tauber's claim for expenses prior to December 19, 2008 is barred by the statute of limitations because "Tauber knew the expenses she paid, and therefore necessarily was on notice of what she was owed." Def.'s Reply 6. Curiously, although Tauber states in her memorandum that she "filed this suit seeking . . . reimbursement for partnership expenses Ms. Tauber incurred," Pl.'s Mem. 1, Tauber does not allege in her Complaint that Souza owed her money for expenses. Rather, she states generally that she disputed Souza's reconciliation of Partnership expenses, referring specifically only to "*Ms. Souza . . . improperly charg[ing] Ms. Tauber* for certain Partnership expenses Ms. Tauber does not owe under the Agreement." Compl. ¶¶ 12-13 & 15. Tauber's allegation that *Souza owes her* money does not surface until the briefings for these motions,

when Tauber argues in her Reply that the amount Souza claims in her Counterclaim "is significantly overblown and does not consider unpaid expenses incurred by Ms. Tauber." Pl.'s Reply 5.

"[S]tatutes of limitations are designed to assure fairness to the defendants." *Swam v. Upper Chesapeake Med. Ctr., Inc.*, 919 A.2d 33, 42 (Md. 2007). It is fair for Tauber to attempt to offset the debt Souza claims in her Counterclaim by identifying expenses allegedly owed to her for the same time period. More fundamentally, the statute of limitations defense applies only when it "is apparent on the face of the complaint." *Young v. Medlantic Lab. P'ship*, 725 A.2d 572, 574 (Md. Ct. Spec. App. 1999). Here, the "claim" that Souza seeks to bar is not part of the Complaint. Therefore, summary judgment in Souza's favor as to a claim for expenses, which is referenced but never made, is DENIED. *See id.*; Fed. R. Civ. P. 56(a).

### B. Jurisdictional Minimum

Souza argues that Tauber's claims should be dismissed "for failure to meet the jurisdictional minimum of this Court," Defs.' Mem. 3, because, without the claims that Souza views as time-barred, Tauber only alleges damages of $21,324.38, *id.* at 19. Tauber maintains that this Court has jurisdiction because "Ms. Tauber's damages in this case as of October 2012[] include[e] over $77,000 owed in sales commissions, $49,000 in rental commissions, and $44,000 in unreimbursed expenses and damages,"[3] and any recovery Souza may have on her counterclaim will not affect the jurisdictional amount. Pl.'s Reply 5.

---

[3] Tauber refers the Court to her Declaration and accompanying lists of damages, Pl.'s Reply Exs. D-F, ECF Nos. 32-5 – 32-7. Citing Rules 26(e)(1) and 37(c)(1), Souza argues that Tauber cannot use the Declaration and accompanying lists of damages "to supply evidence for purposes of a motion, hearing, or trial," because Tauber previously responded to an interrogatory asking the amount of damages she sought and failed to supplement that answer with the figures

7

Pursuant to 28 U.S.C. § 1332(a), federal district courts "have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States . . . ." The required amount in controversy "is satisfied by reference to the allegations of the complaint that are made in good faith, and the sums demanded in the complaint control." *Morris v. Naugle*, 722 F. Supp. 1285, 1286 (D. Md. 1989); *see Choice Hotels Int'l, Inc. v. Shiv. Hospitality, L.L.C.*, 491 F.3d 171, 176 (4th Cir. 2007). Further, once a federal court properly obtains jurisdiction, its jurisdiction "cannot be taken away by any change in the value of the subject of controversy." *Cooke v. United States*, 69 U.S. (2 Wall.) 218, 218 (1864). Likewise, a counterclaim does not impact the jurisdictional amount. *Byrne-Egan v. Empire Exp., Inc.*, No. JFM-11-2857, 2011 WL 6749821, at *1 (D. Md. Dec. 22, 2011).

If a defendant "seek[s] to divest the court of jurisdiction," that defendant has the burden of "show[ing] 'to a legal certainty' that the claim is really for less than the jurisdictional amount." *Morris*, 722 F. Supp. at 1286 (citing *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)); *see JTH Tax, Inc. v. Frashier*, 624 F.3d 635, 638 (4th Cir. 2010). This is a "heavy burden" under which the defendant "must show 'the legal impossibility of recovery' to be 'so certain as virtually to negative the plaintiff's good faith in asserting the claim.'" *JTH Tax, Inc.*, 624 F.3d at 638 (citation omitted); *see Accuvant, Inc. v. MEgadata Tech., LLC*, No. AW-12-1647, 2012 WL 6563371, at *2-3 (D. Md. Dec. 13, 2012). Tauber has alleged in her Complaint that "the matter in controversy exceeds $75,000, exclusive of interest and costs," Compl. ¶ 4, and Souza has not "show[n] 'to a legal certainty' that the claim is really for

---

provided in the Declaration and accompanying lists. Def.'s Reply 4. The evidence in Plaintiff's Exhibits D, E and F is not necessary to the Court's summary judgment ruling and therefore will not be considered. However, Tauber is cautioned that failure to comply with Rule 26(e)(1) may subject her to the sanctions enumerated in Rule 37(c)(1).

less than the jurisdictional amount." *See Morris*, 722 F. Supp. at 1286. Therefore, Souza also has not demonstrated that Tauber acts in bad faith in asserting that the matter in controversy is greater than $75,000. *See JTH Tax, Inc.*, 624 F.3d at 638. Additionally, neither Souza's counterclaim nor the dismissal of Tauber's claim for expenses incurred prior to December 19, 2008 subtracts from the jurisdictional amount. *See Byrne-Egan*, 2011 WL 6749821, at *1. Therefore, Souza's motion to dismiss Tauber's claims for failing to satisfy the jurisdictional requirement is DENIED.

### C. Sales and Rental Commissions

As noted, Tauber filed a two-count complaint, for breach of contract and unjust enrichment. Yet, in her Motion for Partial Summary Judgment, Tauber asks the Court for "an order establishing" that she "is entitled to a percentage of sales commissions . . . [and] rental commissions under the MOU." Pl.'s Mem. 3; *see id.* at 7-8. It appears that Tauber is requesting a declaratory judgment, which is a separate cause of action, available under the Maryland Declaratory Judgment Act, Md. Code Ann., Cts. & Jud. Proc. §§ 3-401 – 3-415, and the Federal Declaratory Judgment Act, 28 U.S.C. § 2201. Tauber did not plead either of these causes of action.

A motion for summary judgment is not a vehicle for a request for a declaratory judgment, or any cause of action not pleaded in the complaint. *Casey v. Geek Squad Subsidiary Best Buy Stores, L.P.*, 823 F. Supp. 2d 334, 359 (D. Md. 2011). Rather, a motion for summary judgment addresses the claims presented in the complaint and serves "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In this manner, the motion enables the Court "to conserve judicial time and energy by avoiding an unnecessary trial

and by providing a speedy and efficient summary disposition." *Bland v. Norfolk & S. Ry.*, 406 F.2d 863, 866 (4th Cir. 1969); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'") (citation omitted). Introducing a new cause of action flies in the face of this purpose.

Moreover, "[w]hile the Federal Rules of Civil Procedure establish a liberal pleading standard, they do '"not afford plaintiffs with an opportunity to raise new claims at the summary judgment stage."' *Casey*, 823 F. Supp. 2d at 359 (quoting *Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 455 F. Supp. 2d 399, 436 (D. Md. 2006) (citation omitted)). To the contrary, "'a plaintiff may not raise new claims after discovery has begun without amending his complaint.'" *Id.* at 360 (quoting *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 617 (4th Cir. 2009)). Allowing Tauber to plead an additional cause of action as part of her summary judgment motion would be unfair to Souza and "would be contrary to the admirable aims of Rule 1," which, like summary judgment motions practice, focuses on "the just, speedy, and inexpensive determination of every action and proceeding," Fed. R. Civ. P. 1. *See Casey*, 823 F. Supp. 2d at 359. Therefore, to the extent that Tauber seeks a declaratory judgment, her motion is DENIED.

### D. Souza's Counterclaim

#### 1. Use of Partnership Assets

Souza alleges in her Counterclaim that Tauber breached the MOU because "[t]he MOU provides that Partnership assets," including the Partnership Client List ("Client List"), "shall not be sold, assigned or transferred to any other party without the express written consent of both Tauber and Souza," and "Tauber caused a third party, Tauber Real Estate Services, LLC to send

marketing materials to individuals on the Partnership Client List." Am. Countercl. ¶¶ 7-10. Tauber asks the Court to dismiss Souza's counterclaim with prejudice because, in her view, Tauber Real Estate Services, LLC's ("LLC") use of the Client List was use by Tauber, a partner, of "Partnership assets for non-Partnership activities," rather than use by a third party. Pl.'s Mem. 1, 11-12. Souza maintains that "[t]he LLC is not a party to the MOU, and is an entity with which Souza plays no role," and "is a third party to which Tauber should have never provided the Partnership Client List." Def.'s Mem. 14. In Tauber's view, the issue is not "whether an LLC is a third party under Maryland law," but rather "whether Ms. Tauber's solely owned LLC would be a third party under Section 10 of the MOU," and Tauber contends that the LLC is not a third party for purposes of the LLC. Pl.'s Reply 13. Tauber argues that Paragraph 10 "was not intended to govern Ms. Tauber's use of Partnership assets for her Florida business" or "to prevent Ms. Tauber from soliciting personal contacts who happen to also be on the Client List." *Id.* She notes that there were no "proceeds" associated with her use of the Client List for the LLC, such that Ms. Souza "would be entitled to nothing" even if it were a transfer to a third party. *Id.* at 13-14. Additionally, she states that "Ms. Souza cites no authority for her claim that she could be entitled to receive a commission on a sale of real estate in Florida . . . under Florida law without being licensed in Florida." *Id.* at 14 n.7.

A breach of contract is "a failure without legal excuse to perform any promise which forms the whole or part of a contract . . . ." *In re Ashby Enters., Ltd.*, 250 B.R. 69, 72 (Bankr. D. Md. 2000) (quoting *Conn. Pizza, Inc. v. Bell Atl.-Wash., D.C., Inc.*, 193 B.R. 217, 225 (Bankr. D. Md. 1996) (quoting *Weiss v. Sheet Metal Fabricators, Inc.*, 110 A.2d 671, 675 (Md. 1955)) (quotation marks omitted)). Here, the issue is whether Tauber breached the MOU by using the Client List for the LLC. As noted, the MOU provides that "no Partnership assets, including . . .

the Partnership client list . . . shall be sold, assigned, or transferred to any third party (hereinafter, a 'Sale') without the express written consent of both [Tauber and Souza]." MOU ¶ 10. Therefore, Tauber breached the MOU if the LLC is a "third party."

When construing an unambiguous contract, "courts focus on the four corners of the agreement[,] and ascribe to the contract's language its customary, ordinary, and accepted meaning." *Dynacorp Ltd. v. Aramtel Ltd.*, 56 A.3d 631, 670 (Md. Ct. Spec. App. 2012) (citations and quotation marks omitted); *see 100 Investment Ltd. P'ship v. Columbia Town Ctr. Title Co.*, 60 A.3d 1, 23 (Md. 2013). In these circumstances, the contract's construction is "an issue of law for resolution by the trial judge." *Bd. of Educ. of Charles Cnty. v. Plymouth Rubber Co.*, 569 A.2d 1288, 1296 (Md. Ct. Spec. App. 1990). However, "when there is a *bona fide* ambiguity in the contract's language or legitimate doubt as to its application under the circumstances . . . the contract [is] submitted to the trier of the fact for interpretation." *Id.* Notably, "[a]mbiguity arises if, to a reasonably prudent person, the language used is susceptible of more than one meaning and not when one of the parties disagrees as to the meaning of the subject language." *Id.*

A reasonably prudent person could conceive of more than one meaning for "third party" in this context. A third party could be any legally distinct entity, including the LLC, *see Gosain v. Cnty. Counsel of Prince George's Cnty.*, 22 A.3d 825, 833 (Md. 2011) ("'[A] corporation is a distinct legal entity, separate and apart from its stockholders.'" (citation omitted)), such that Tauber could not use the Client List for the LLC. Alternatively, a third party could be a person other than Tauber or Souza, or a business in which neither party was involved, such that the MOU would not bar Tauber's use of the Client List for her own business in Florida. Therefore, the contract is ambiguous, and its meaning should be determined by the trier of fact. *See Bd. Of*

12

*Educ. of Charles Cnty.*, 569 A.2d at 1296. Both parties' motions for summary judgment as to Souza's Counterclaim, insofar as they are based on Tauber's use of the Client List for the LLC, are DENIED.

**2. Expenses**

Souza also alleges that Tauber breached the contract by "fail[ing] and/or refus[ing] to reimburse Ms. Souza for half" of the business expenses incurred during the Equal Partner Stage, which the MOU required her to pay. Am. Countercl. ¶¶ 4-5. Souza contends that she "is entitled to judgment as to her Counterclaim for unpaid expenses," because "Tauber has repeatedly acknowledged her debt to Souza," admitting twice in writing, as well as in a deposition, that she "owed Souza $38,557.76 for 2006 and $31,242.51 for 2007." Def.'s Mem. 17-18. Souza notes that Tauber paid her $20,000, "leaving $49,800.27 unpaid." *Id.* at 18. Tauber disagrees about the amount that she allegedly owes Souza, insisting that she "owes Ms. Souza substantially less than $49,800.27 for unpaid expenses," and that the reconciliation she provided "was never meant to be a final acknowledgement of the amount of money owed." Pl.'s Reply 3. According to Tauber, Ms. Souza owes her "over $30,000 in unpaid business expenses," which were not listed on the reconciliation. *Id.* at 6. Tauber also argues that she incurred damages by not being able to itemize expenses on her tax returns, due to Souza's delay in getting the figures to her. *Id.* at 7. Tauber contends that, "because of these disputes, Ms. Souza's expense claims are a question of fact and cannot be resolved on summary judgment." *Id.*

It is true that Tauber testified that she owed Souza money. Tauber Dep. 38:14-17, Def.'s Mem. Ex. 3, ECF No. 31-3. Further, in a May 5, 2009 letter to Souza, Tauber stated that, having paid $20,000 to Souza, Tauber still owed her $24,462.04, May 5, 2009 Ltr., Def.'s Mem. Ex. 6, ECF No. 31-6; and Tauber e-mailed Souza on September 13, 2011, noting that she "sent [Souza]

13

an accounting of what [she] believed was owed between [the parties] for the years 2006 and 2007, verified by [Tauber's] accountant," Sept. 13, 2011 Email, Def.'s Mem. Ex. 9, ECF No. 31-9. However, this figure does not correspond with the amounts Souza claims. *See* Def.'s Mem. 17-18. Moreover, Souza testified that she and Tauber never reached an agreement regarding how much each of them owed or how many expenses Tauber had paid, and that she would "owe [her] share" of any website setup or maintenance fees or FICA payments that Tauber made. Souza Dep. 89:14-16, 102:11-15, Pl.'s Reply Ex. A, ECF No. 32-1. Clearly, in moving for summary judgment as to this alleged breach, Souza has not met her burden of showing that no material facts are in dispute. *See Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). Therefore, Souza is not entitled to judgment as a matter of law, and her motion for summary judgment as to expenses is DENIED. *See* Fed. R. Civ. P. 56(a).

## IV. CONCLUSION

In sum, Plaintiff/Counter-Defendant's Motion for Partial Summary Judgment is DENIED. Defendant/Counter-Plaintiff's Cross-Motion for Summary Judgment and/or to Dismiss Any Remaining Claims for Lack of Jurisdiction is DENIED.

Dated: 5\10\13

/S/
Paul W. Grimm
United States District Judge

lyb